**OLD REPUBLIC INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 83–6–00801.**

United States Court of International Trade.

Jan. 2, 1986.

Sandler & Travis, Gilbert Lee Sandler, Miami, Fla., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Com-

mercial Litigation Branch, Kenneth N. Wolf, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiff, a surety, brings this action challenging the United States Customs Service's (Customs) classification of merchandise invoiced as "LPG equipment for cars" under item 711.78, Tariff Schedules of the United States (TSUS). Defendant moves to dismiss the action for lack of jurisdiction claiming that the protest was not timely filed. The motion is denied.

On September 10, 1980, the merchandise entered the United States under a single entry consumption entry bond. The entry was liquidated, and a bill for duties sent to the importer was not paid.

On November 5, 1981, Customs mailed to plaintiff a letter which in part states:

Enclosed herewith is a listing of 484 bills due to the United States Customs Service totaling $1,166,344.81 owed by principals for whom you are surety and which are due and payable immediately. Formal demands were made on the principals involved but the bills remain unpaid. Under the terms of your bond you are an original promisor and debtor with each of your principals.

This is a formal demand upon you for immediate payment of the amounts noted on the enclosures hereto:

Attached to the letter was a computer printout listing 484 bills. The listing for the bill in question set forth the bill number, the billing date, the port of entry and the amount due. No information concerning the bill was set forth in the columns on the printout designated "Delinquent Debtor Name and Address" and "Entry No." [1]

On January 29, 1982 Customs sent another letter to plaintiff, saying in part:

Attached is a list of 5 bills amounting to $21,777,48 for which we are enclosing copies of the applicable entries and bonds.

Full payment of $21,777.48 must be made within thirty (30) days from the date of this notice. Failure to satisfy this formal demand may result in a recommendation to the Secretary of the Treasury that you no longer be authorized to act as surety on Customs Bonds.

The list attached to the January 29, 1982 letter provided the name of the importer for each of the five listed bills. The enclosed copy of the single entry bond for the transaction in question contained the importer's name as well as the entry number.

On February 12, 1982, plaintiff filed a protest challenging the classification of the merchandise, and on December 3, 1982, the protest was denied as untimely. On June 1, 1983, plaintiff brought this action contesting the denial of the protest.

Defendant alleges that, under 19 U.S.C. § 1514(c), plaintiff had 90 days from the November 5, 1981 mailing in which to file a protest; the letter of January 29, 1981 was a follow-up demand that did not cause the jurisdictional period to run anew; and the action must be dismissed because the February 12, 1982 protest was filed more than 90 days after November 5, 1981.

Plaintiff argues that the action is timely because the November 5, 1981 letter provided insufficient information to notify it that demand was being made on the applicable bond; a sufficient demand was not mailed until January 29, 1982; and the February 12, 1982 protest is timely because it was filed within 90 days of January 29, 1982.

The issue before the Court is whether the November 5, 1981 letter was a sufficient notice of demand for payment against the applicable bond.

A decision by Customs regarding the classification of merchandise and the rate

---

**1.** The copy of the printout attached as Exhibit C to the Memorandum in Support of Defendant's Motion to Dismiss contains additional handwritten information. At oral argument, defendant's counsel advised the Court that such information did not appear on the printout at the time of the November 5, 1981 mailing.

and amount of duty chargeable is final and conclusive unless a protest is timely filed. 19 U.S.C. § 1514(a). The Court does not have jurisdiction over any action where a protest was filed later than the time provided by statute. *San Francisco Newspaper Printing Co. v. United States*, 9 C.I.T. —, 620 F.Supp. 738 (1985); *Texas Mex Brick & Import Co. v. United States*, 72 Cust.Ct. 291, C.R.D. 74–2, 371 F.Supp. 579 (1974). Section 1514(c)(1)(A) provides that protests may be filed by "importers or consignees shown on the entry papers, or their sureties." The section further provides:

> A protest by a surety which has an unsatisfied legal claim under its bond may be filed within 90 days from the date of mailing of notice of demand for payment against its bond. If another party has not filed a timely protest, the surety's protest shall certify that it is not being filed collusively to extend another authorized person's time to protest as specified in this subsection.

19 U.S.C. § 1514(c)(2). Neither the statute nor the regulations specify what information must be provided to a surety in the notice of demand in order to commence the running of the 90-day period in which a protest may be filed. *See* 19 U.S.C. § 1514(c)(2); 19 C.F.R. § 174.12(e)(3) (1985).

Plaintiff argues that a notice which does not enable a surety to determine the transaction for which a protest may be filed is deficient. It contends that the printout attached to the November 5, 1981 letter, which listed 484 bills, did not give plaintiff "notice of demand for payment against its bond" under section 1514, because it did not identify the entry, importer or bond applicable to the bill in question. Defendant disagrees, arguing that even though the November 5, 1981 letter and printout did not identify the importer's name, the entry number or the bond for the bill in question, the notice of demand was nonetheless sufficient. It contends that section 1514 only requires that the notice set forth a monetary demand.[2]

■ Defendant states that a surety must obtain on its own the information necessary to identify the protestable transaction, and that if plaintiff requested information from Customs concerning any of the 484 bills listed on the computer printout, Customs would have identified for plaintiff the corresponding importer, entry number or bond. Defendant argues that if Customs did not respond to such an inquiry in a timely manner, "the Government would conceivably agree or the Court could find that a toll may operate during the 'unavailability' of the requested information."[3]

Defendant also argues that a surety could monitor Customs bulletin notices of liquidation or require its principals to notify it when an entry covered by a bond is liquidated. By filing its protests within 90 days of liquidation or reliquidation under section 1514, a surety could protest its interests without waiting to receive notice of demand for payment.

Defendant's reasoning would deny effect to Congress' amendment of section 1514 in 1979.[4] To protect the rights of sureties, Congress specifically provided that sureties receive actual notice of a principal's failure to pay. Congress also recognized that sureties should not have to rely solely upon their defaulting principals for information concerning protestable transactions:

> It is also clear under present law that sureties have had difficulty in fulfilling the prerequisites to suit in the Customs Court due to the frequent failures of the sureties to receive notice of the failure of

---

**2.** Defendant cites several cases in support of its contention that a bald demand for payment is sufficient in the absence of a requirement that a demand be particularized. The cases are inapposite as none deals with a situation where the recipient was potentially liable to the demanding party on numerous bonds or accounts. *See, e.g., In re Marin Motor Oil, Inc.*, 740 F.2d 220 (3d Cir.1984) (timeliness of demand for reclamation under bankruptcy laws); *Miller v. Davis*, 34 A. 265, 88 Me. 454 (Sup.Jud.Ct.1896) (demand for payment of taxes).

**3.** Defendant's Supplemental Memorandum in Support of Motion to Dismiss, at 7.

**4.** Trade Agreements Act of 1979, Pub.L. No. 96–39, § 1001(b)(3)(E), 93 Stat. 144, 305 (1979).

the importer to pay the duties until after the time for filing a protest has expired. Section 1001(b)(3)(E) would remedy this problem by permitting a surety to file a protest in its own name and by extending the time within which it may file a protest so long as it certifies that it is not filing the protest simply because the importer allowed his time to file a protest to expire without filing a protest.

S.Rep. No. 249, 96th Cong., 1st Sess. 254 (1979), *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 640.

 Defendant essentially admits that it would be impossible for plaintiff to ascertain without Customs assistance, the entry number, bond or importer's name applicable to a bill which is identified on a computer printout only by a bill number assigned by Customs. A surety would have less time to prepare its protest than that contemplated by the statute if the bond on which demand is being made could not be ascertained until some time after the demand letter from Customs is received. The statute plainly states that the 90-day limitations period shall run "from the date of *mailing* notice of demand for payment...." 19 U.S.C. § 1514(c) (1982) (emphasis added). A letter to a surety which does not constitute notice of demand for payment cannot be cured upon Customs provision of supplemental information by alternative means, without reducing the time provided for the preparation of a protest by a surety.

Defendant's contention that the government could agree to toll the limitations period during the unavailability of information requested by a surety is misplaced. Customs does not have the power to enlarge the jurisdiction of the court. *San Francisco Newspaper Printing Co. v. United States*, 9 C.I.T. ——, 620 F.Supp. 738 (1985). "A time limitation that is a jurisdictional prerequisite is not subject to waiver of estoppel." *Id.* at ——, 620 F.Supp. at 740; *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–93, 102 S.Ct. 1127, 1131–32, 71 L.Ed.2d 234 (1982); *United States v. Reliable Chemical Co.*, 66

CCPA 123, 128, C.A.D. 1232, 605 F.2d 1179, 1184 (1979).

If a demand for payment lacks information available to Customs which would provide a surety sufficient means of ascertaining the bond on which demand for payment is being made, such a demand does not constitute notice of demand for payment against a bond. Since the November 5, 1981 letter and accompanying printout did not contain any information from which plaintiff could ascertain that a demand was being made on the bond in question, it did not constitute notice of demand for payment against plaintiff's bond.

The Court holds that the mailing of the November 5, 1981 letter did not start the running of the 90 days in which plaintiff was required to file a protest, and that sufficient notice of demand for payment was not mailed until January 29, 1982. The protest filed on February 12, 1982 was timely.

Defendant's motion is denied. So ordered.