**HALPERIN SHIPPING CO., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 87-02-00371.**

United States Court of International Trade.

July 2, 1990.

**1164**

Serko & Simon (Joel K. Simon, David Serko and Leibert L. Greenberg), New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, New York City, Al J. Daniel, Jr., for defendant.

## OPINION

CARMAN, Judge:

This action is before the Court on motion of the defendant United States (hereinafter the government) to dismiss this action for lack of jurisdiction and failure to state a claim upon which relief can be granted pursuant to USCIT Rule 12. The government claims this Court lacks jurisdiction because plaintiff Halperin Shipping Co., Inc. (hereinafter Halperin) failed to timely file a protest under section 514 of the Tariff Act of 1930 as amended, 19 U.S.C. § 1514 (hereinafter section 1514), thereby failing to meet the jurisdictional require-ments of 28 U.S.C. § 1581(a). For the reasons that follow, this Court determines that it lacks subject matter jurisdiction and must dismiss this action. Accordingly, the Court will not address the government's other claims.

## BACKGROUND

Halperin initiated this action pursuant to 28 U.S.C. § 1581(a) to recover Customs duties it allegedly paid twice to the United States Customs Service (hereinafter Customs) for the importation of a single entry of gold necklaces entered at the port of JFK New York on August 14, 1980. The estimated duty on this entry was $9,141.47. Neither Halperin nor anyone else timely filed an entry summary or paid the estimated duty. In its amended complaint Halperin claims it originally paid the duties at issue to its licensed customhouse broker, Saar Systems Inc. (hereinafter Saar), for remittance to Customs. Apparently Saar stole the monies and never remitted them to Customs.

Nearly two years later, on June 18, 1982, Customs sent Halperin a "Notice of Liquidated Damages Incurred and Demand For Payment" (hereinafter Notice of Liquidated Damages).[1] The notice demanded that Halperin, as importer of record, pay $9,141.47 to the government for the estimated duties due and $90,039.47 in liquidated damages for failure to file the entry summary and estimated duties. Halperin neither filed a protest nor petitioned for remission or mitigation of the penalties pursuant to 19 U.S.C. § 1618 at this time.

Subsequent to the June 18, 1982 notice, Halperin and the government engaged in lengthy negotiations towards settling the government's claims on the entry at issue in this case and twenty-seven other entries for which Halperin was delinquent in paying duties.[2] On March 31, 1983, after con-

---

1. At approximately the same time Customs also sent Halperin similar demands for payment relating to some 27 other entries for which duties were due. *See* Memorandum in Support of Defendant's Motion to Dismiss (hereinafter Defendant's Original Brief), Exhibit B.

2. The subject of this action, Entry No. 80–774767–6, is one of 28 entries for which the government sought estimated duties due and liquidated damages from Halperin totaling nearly $4,000,000. At least some of the other entries not before the Court in this particular case appear to have been contested in separate

siderable negotiation, offers of settlement and counter offers, the then Assistant Secretary of the Treasury John M. Walker, Jr.[3] notified Halperin by letter of the government's final offer of settlement and compromise. *See* Defendant's Original Brief, Exhibit L. The letter provided clear notice that the government would institute suit within the week if payment were not received forthwith.[4]

On April 18, 1983 Halperin made another offer of settlement to the Regional Commissioner of Customs and tendered payment of the $219,586.00 Halperin seeks to recover in this case. *See* Memorandum in Support of Defendant's Renewed Motion to Dismiss (hereinafter Renewed Motion to Dismiss Brief), Exhibit A. Customs accepted this offer and negotiated the checks. *Id.*, Minsky Declaration ¶¶ 8 and 9; Defendant's Original Brief, Exhibit N. Thereafter, Customs closed its files on the case without bringing an action against Halperin.

On June 8, 1983 Halperin filed a purported protest which it asserts is a proper predicate for this Court to exercise jurisdiction. Halperin's "protest" referred to Assistant Secretary Walker's March 31, 1983 letter as a "demand for payment" from which Halperin was aggrieved. *See* Court File (entry papers). Customs denied the protest on January 30, 1987, declaring the issue was not protestable under section 1514. *Id.*

Thereafter, Halperin filed suit in this Court seeking return of the alleged duplicate payment of duties to Customs. Halperin claimed that Saar was an agent of the government and that Customs' negligence in failing to timely notify Halperin that duties were owed on the imports resulted in the so-called duplicate payment of the duties and that Halperin was entitled to a refund of the alleged excess payment of duties. Before issue was joined, the government moved to dismiss this action on grounds substantially similar to the motion now before the Court. In *Halperin Shipping Co., Inc. v. United States*, 13 CIT —, Slip Op. 89–78, 1989 WL 61811 (June 6, 1989), this Court denied the motion to dismiss with leave to renew. After the government filed its answer and discovery had been initiated, the government filed its renewed motion to dismiss.

## CONTENTIONS OF THE PARTIES

The government contends that this Court lacks subject matter jurisdiction over this action due to Halperin's failure to file a timely protest of the June 18, 1982 Notice of Liquidated Damages that demanded payment of estimated duties and liquidated damages. The government notes that under section 1514 of title 19 of the United States Code decisions of Customs officials are final and conclusive unless a protest is filed within ninety days of the protestable decision. In order to obtain jurisdiction in this Court the government argues Halperin would have had to file a protest within ninety days of the June 18, 1982 Notice of Liquidated Damages. Halperin's alleged protest, filed on June 8, 1983, fell outside this jurisdictional time limit. Furthermore, the government argues that the March 31, 1983 letter from Assistant Secretary Walker was not a protestable decision, thus

---

actions suspended under this case. *See e.g., Halperin Shipping Co., Inc. v. United States,* Court Nos. 88–06–00412 (involving seven entries) and 89–08–00481 (involving two entries). Inexplicably, in this action Halperin's amended complaint seeks to recover the entire $219,-586.00 it paid in settlement of all 28 cases.

**3.** Mr. Walker is currently a judge of the United States Court of Appeals for the Second Circuit.

**4.** The Walker letter stated in pertinent part as follows:

Upon a review of the entire matter and, in particular, the company's current financial condition, I can find neither the requisite litigation risk, nor the inability of Halperin to pay the duties which would support consideration of a compromise. Rather, I support Commissioner von Raab's offer to accept payment of the debt over a three-year period at 14.2% interest as an extremely equitable balancing of the interests of both the Government and Halperin Shipping Company, Inc.

I have been informed that the Justice Department will be filing a suit within the week if payment is not received or the installment arrangement is not concluded.

Defendant's Original Motion to Dismiss, Exhibit L.

Halperin's alleged protest filed within ninety days of the Walker letter did not give rise to jurisdiction in this Court.

Halperin opposes this motion contending that the decision of this Court denying the government's original motion to dismiss operates to bar the current motion by virtue of the law of the case and *stare decisis.* Additionally, Halperin contends the government mischaracterizes its action as one for liquidated damages when in actuality it is an action to recover a duplicate payment of duties. Halperin claims it properly protested Assistant Secretary Walker's March 31, 1983 letter, pursuant to 19 U.S.C. § 1514(a)(3), which provides for protest of "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury." Halperin claims the Walker letter was "an actual assessment of a specific sum of money," a protestable decision, from which Halperin timely filed a protest. *See* Plaintiff's Memorandum in Opposition to Defendant's [First] Motion to Dismiss at 6–7 (incorporated by reference in Plaintiff's Memorandum in Opposition to Defendant's Second Motion to Dismiss).

## DISCUSSION

■ As a preliminary matter the Court notes that contrary to Halperin's assertions neither law of the case nor *stare decisis* operate to preclude this Court from assessing its subject matter jurisdiction. Subject matter jurisdiction cannot be waived by the parties or this Court and can be raised at any time. *Capron v. Van Noorden,* 2 Cranch (6 U.S.) 126, 2 L.Ed. 229 (1804); *Morganroth v. Quigg,* 885 F.2d 843, 845 (1989) (court raised issue *sua sponte* ). Moreover, it is well settled that when a jurisdictional issue is raised, plaintiff has the burden to prove that jurisdiction exists. *See e.g., Hambro Automotive Corp. v. United States,* 66 CCPA 113, 117, C.A.D. 1231, 603 F.2d 850, 853 (1979); *Lowa, Ltd. v. United States,* 5 CIT 81, 83, 561 F.Supp. 441, 443 (1983), *aff'd,* 2 Fed.Cir. (T) 27, 724 F.2d 121 (1984).

■ Halperin predicates jurisdiction in this Court under 28 U.S.C. § 1581(a) [5] and 19 U.S.C. § 1514,[6] which provide that the filing of a valid protest of an action of the Customs Service, within ninety days from its date, is a condition precedent to the establishment of jurisdiction in this Court. Halperin contends the Walker letter was a protestable decision for purposes of jurisdiction in this Court. An examination of the statutory scheme and the facts of this case lead this Court to conclude the Walker letter was not a protestable decision.

It is uncontroverted that Halperin did not file a protest within ninety days of the government's Notice of Liquidated Damages dated June 18, 1982. Nevertheless, contrary to the government's contention, the June 18, 1982 Notice of Liquidated Damages was not a protestable decision. This argument has been squarely rejected by the Court of Appeals for the Federal

---

**5.** 28 U.S.C. § 1581(a) (1988) provides as follows:

(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

**6.** 19 U.S.C. § 1514(a) and (c)(2) (1982 & Supp. V 1987) (emphasis added) provides in pertinent part:

(a) ... decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

....

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

....

(5) the liquidation or reliquidation of an entry, or any modification thereof;

....

*shall be final and conclusive* upon all persons (including the United States and any officer thereof) *unless a protest is filed* in accordance with this section, or unless a civil action contesting the denial of a *protest,* in whole or in part, is commenced in the United States Court of International Trade....

....

[ (c) ] (2) A protest of a decision, order, or finding ... shall be filed with such customs officer within *ninety days* after but not before—

(A) notice of liquidation or reliquidation, or

(B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

Circuit, which has held that "an assessment of liquidated damages is not a 'charge or exaction' that must be challenged by protest under 19 U.S.C. § 1514...." *United States v. Toshoku America, Inc.,* 879 F.2d 815, 818 (Fed.Cir.1989) (construing *United States v. Utex Int'l, Inc.,* 6 Fed.Cir. (T) 166, 857 F.2d 1408 (1988)). Since the June 11, 1982 Notice of Liquidated Damages was not a protestable decision it did not start the ninety day filing deadline and the fact that Halperin did not protest the Notice of Liquidated Damages does not deprive this Court of jurisdiction. However, since Halperin's alleged protest, dated June 8, 1983, was clearly filed within ninety days of the March 31, 1983 Walker letter, well within the time limitation of 19 U.S.C. § 1514(c)(2), this Court must decide whether the Walker letter constituted a protestable "charge or exaction" for purposes of establishing jurisdiction in this Court.

As the importer of record in this case, Halperin was obligated to pay the estimated duties upon entry of the merchandise. *See* 19 U.S.C. § 1505(a) (1982) and 19 C.F.R. § 141.1(b) (1980). Apparently, the first time Halperin learned the duties had not been paid on the entry in this case was when it received the June 18, 1982 Notice of Liquidated Damages from Customs demanding payment of estimated duties and liquidated damages. The Notice of Liquidated Damages specified the amount claimed due and owing, the entry number at issue, the importer number, the port of entry and the date of the demand, and clearly notified Halperin that it could petition Customs for remission or mitigation of the claim within sixty days.

Upon receipt of the notice demanding payment of estimated duties and liquidated damages, any right Halperin had to contest the amount of duties due or any other matters relating to the liquidation of the merchandise at issue had expired when the items were liquidated, or as appears the case here, deemed liquidated by statute, and the time to protest had lapsed. *See* 19 U.S.C. § 1504 (1982); *Utex Int'l, Inc.,* 6 Fed.Cir. (T) at 168, 174, 857 F.2d at 1410, 1414 (all findings by Customs officials merge in the liquidation); *Ambassador Div. of Florsheim Shoe v. United States,* 748 F.2d 1560, 1562 (1984); *Hambro Automotive Corp.,* 66 CCPA at 117–18, 603 F.2d at 853. Halperin is thus precluded from contesting the amount of estimated duties it paid.

As concerns the demand for liquidated damages, Halperin could have petitioned Customs for remission or mitigation of the penalties demanded by Customs pursuant to 19 U.S.C. § 1618. Instead, Halperin chose to negotiate with Customs in order to settle the government's claims regarding all twenty-eight entries for the duties which had not been paid by Saar, its customhouse broker.

As the documents and affidavits make clear, the March 31, 1983 Walker letter was the culmination of long series of voluntary settlement negotiations entered into by Halperin to diminish its liability on the outstanding claims. The Walker letter was not a "charge" or "exaction" within the meaning of section 1514, *inter alia* because it did not assess a specific sum of money relating to specific entries of merchandise, *Alberta Gas Chemicals, Inc. v. Blumenthal,* 82 Cust.Ct. 77, 81–82, C.D. 4792, 467 F.Supp. 1245, 1249–50 (1979) (and citations therein), and because Halperin was under no compulsion to tender any settlement payments to the government on account of the letter. *ITT Semiconductors v. United States,* 6 CIT 231, 234–37, 576 F.Supp. 641, 643–46 (1983) (settlement decision is not protestable) (citing *Carling-switch, Inc. v. United States,* 85 Cust.Ct. 63, C.D. 4873, 500 F.Supp. 223 (1980), *aff'd,* 68 CCPA 49, C.A.D. 1264, 651 F.2d 768 (1981)). As Halperin was fully aware, it was always free to opt out of the settlement negotiations and await judicial resolution of claims in a suit initiated by the government.[7]

---

7. A letter from Halperin's counsel to Customs exhibits the voluntariness of Halperin's settlement negotiations and payments. The letter stated that "[a]s we all recognize, the alternative to a compromise in this situation is protracted litigation which will be of little benefit to either

In short, the Walker letter was not a protestable decision within the meaning of section 1514. As a result, Halperin's June 8, 1983 "protest" was no protest at all and incapable of satisfying the jurisdictional requirements for suit in this Court.

 Halperin's characterization of its cause of action as one for a refund of a duplicate payment of duties does not alter the requirement that it file a valid and timely protest as a condition precedent to jurisdiction in this Court pursuant to section 1514. *ITT Semiconductors*, 6 CIT 231, 576 F.Supp. 641; *Hambro Automotive Corp.*, 66 CCPA at 117, 603 F.2d at 853; *Peerless Ins. Co. v. United States*, 12 CIT ——, ——, 703 F.Supp. 104, 106 (1988); *San Francisco Newspaper Printing Co. v. United States*, 9 CIT 517, 620 F.Supp. 738 (1985); *Star Sales & Distrib. Corp. v. United States*, 10 CIT 709, 710, 663 F.Supp. 1127, 1128 (1986) (and citations therein). Considerations of sovereign immunity mandate that the United States only be subject to suit when the statutorily defined terms of its consent have been duly met. *United States v. Boe*, 64 CCPA 11, 15–16, C.A.D. 1177, 543 F.2d 151, 154–55 (1976). Those requirements will be strictly construed and this Court has no power to relax the statutory preconditions for waiver of sovereign immunity or to apply equitable principles to expand this Court's jurisdiction. *Id.* at 16, 543 F.2d at 155; *Georgetown Steel Corp. v. United States*, 4 Fed.Cir. (T) 143, 147, 801 F.2d 1308, 1312 (1986); *NEC Corp. v. United States*, 5 Fed.Cir. (T) 49, 51, 806 F.2d 247, 249 (1986) (and citations therein). The absence of a valid protest is fatal to the maintenance of jurisdiction in this Court.

 While this Court sympathizes with Halperin because it was apparently the victim of a thief, its customhouse broker, Halperin chose its customhouse broker, the government did not. Halperin's remedy is against the thief, not the government.

party." Defendant's Original Brief, Exhibit J at 2 (letter from law firm Serko & Simon to Customs' Regional Commissioner Dennis T. Snyder). Furthermore, it cannot be gainsaid that Halperin reaped substantial benefit from its

## CONCLUSION

Based upon the foregoing reasoning this Court concludes that Halperin has failed to properly invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1581(a) and 19 U.S.C. § 1514. Accordingly, this action is dismissed.

participation in the settlement negotiations since at their conclusion Halperin paid considerably less than the government's original penalty claims, which totaled nearly $4 million.